IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


PAMELA SUE C.,[1]                                                No. 3:17-cv-01973-HZ

                        Plaintiff,                              OPINION & ORDER

        v.

COMMISSIONER, Social Security
Administration,

                        Defendant.


HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying, in part, her application for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-
governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-
governmental party's immediate family members.

§ 1382(c)(3)). Because the Administrative Law Judge (ALJ) erred in improperly discounting parts of Plaintiff's subjective symptom testimony and parts of the medical opinion evidence, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## BACKGROUND

Plaintiff was born on April 7, 1962 and was fifty-one years old on December 1, 2013, the alleged disability onset date. Tr. 52.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through December 31, 2018. Tr. 24. Plaintiff has at least a high school education and is unable to perform any past relevant work. Tr. 36. Plaintiff claims she is disabled based on conditions including depression, fibromyalgia, knee problems, and carpal tunnel syndrome. Tr. 351.

Plaintiff's benefits application was denied initially on March 24, 2015, and upon reconsideration on June 10, 2015. Tr. 22. A hearing was held before Administrative Law Judge Jo Hoenninger on February 24, 2016. Tr. 47–80. ALJ Hoenninger issued a written decision on July 11, 2016, finding that, as of May 1, 2015, Plaintiff was disabled and entitled to benefits. Tr. 38; 22–38. Plaintiff was therefore not disabled or entitled to benefits between December 1, 2013 and April 30, 2015. Tr. 22–38. The Appeals Council declined review, rendering ALJ Hoenninger's decision the Commissioner's final decision. Tr. 1–6.

The central issue here is whether the ALJ properly determined that Plaintiff was not disabled between December 1, 2013 and April 30, 2015.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 14.

be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 24.

At step two, the ALJ determined that as of December 1, 2013, Plaintiff "had the following severe impairments: fibromyalgia; carpal tunnel syndrome status post release and left cubital tunnel release; osteoarthritis in the wrists, shoulders, and knees; status post left second metatarsal fracture; chronic leg knee meniscal tear; shoulder tendinopathy and subdeltoid arthritis; right ACL tear; anxiety disorder; major depression disorder; and polysubstance addiction disorder." Tr. 24–25. The ALJ determined that Plaintiff's nonallopathic lesions of the lumbar, sacral and thoracic regions were not severe. Tr. 24.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25–26. In particular, the ALJ found that Plaintiff's physical conditions did not meet the requirements of Listing 1.02, 1.04, or 11.14 and her mental impairments did not satisfy paragraph "C" of the applicable mental disorder listings. Tr. 25–26.

Before proceeding to step four, the ALJ found that, before May 1, 2015, Plaintiff had the residual functional capacity (RFC) to perform light work except that

> she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and could frequently stoop, kneel, crouch, and crawl. The claimant could occasionally reach overhead with the right upper extremity and could frequently handle bilaterally. She could understand and remember simple instructions and had sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks. The claimant could have superficial contact with the general public and occasional, brief interactions with coworkers and supervisors.

Tr. 26–33. Beginning on May 1, 2015, the ALJ concluded that Plaintiff had the RFC to perform sedentary work except that

she [could] occasionally climb ramps, stairs, ladders, ropes, and scaffolds; and [could] frequently stoop, kneel, crouch, and crawl. The claimant [could] occasionally reach overhead with the right upper extremity and [could] frequently handle bilaterally. She [could] understand and remember simple instructions and had sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks. The claimant should have superficial contact with the general public and [could] have occasional, brief interactions with coworkers and supervisors.

Tr. 33–36.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 36.

At step five, the ALJ relied on the testimony of a vocational expert to find that prior to May 1, 2015, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. 37–38. Beginning May 1, 2015 there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 38.

Accordingly, the ALJ concluded that the Plaintiff was not disabled prior to May 1, 2015 but became disabled, and remained disabled, as of that date. Tr. 38.

<u>STANDARD OF REVIEW</u>

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal

quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues on appeal. She argues the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony and (2) improperly rejecting medical opinion evidence.

### I.     Plaintiff's Testimony

Plaintiff argues the ALJ improperly discounted her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."). An ALJ must include

specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," and did not identify evidence of malingering. Tr. 27. Plaintiff now argues the ALJ did not provide clear and convincing reasons for rejecting testimony related to her (1) lower extremities, including knees and feet, and (2) upper extremities, including hands, shoulder, and elbow. She also argues the ALJ improperly relied on her activities of daily living. The Court finds the ALJ improperly rejected Plaintiff's testimony regarding her hands and elbow, and improperly relied on her activities of daily living.

### 1. Lower Extremities

An ALJ may reject subjective symptom testimony when the record demonstrates only conservative treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), and modest findings, *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ did not err where plaintiff's pain testimony was uncorroborated by objective medical evidence). Regarding Plaintiff's knee pain, the record reflects that Plaintiff presented with a limp, knee effusion, and tenderness in September 2014. Tr. 27, 535. Her treating physician recommended "conservative care," noting only mild symptoms that "may improve with [physical therapy]." Tr.

535. An MRI of her knees in December 2014 showed only "minimal right medial tibiofemoral compartment osteoarthritis and some degree of left patellofemoral joint arthritis." Tr. 27, 483. Regarding Plaintiff's foot pain, a September 2014 x-ray did not reveal either arthritis or a fracture. Tr. 535. An October 2014 MRI showed a "healing occult fracture of the midshaft of the second metatarsal" from a traumatic injury. Tr. 28, 486. Surgery was not deemed necessary, and a follow up visit at the end of October noted the foot was "WBAT" or "weight bearing as tolerated," that Plaintiff was not using any protection for the fracture site, and "they report[ed] no issues" since the last visit. Tr. 520.

Plaintiff argues the ALJ mischaracterized the record. Rather than explain *which* findings are not modest or *how* treatment was not conservative, Plaintiff identifies an ACL surgery from 2012,[3] notations of "osteoarthritis and arthritis in the knee" in the record, and the fact that Plaintiff was told to wear a boot following a foot fracture. The Court first notes that Plaintiff's 2012 ACL surgery occurred before the alleged disability onset date, and that Plaintiff reported "doing well" afterwards. Tr. 27, 574. Moreover, as discussed above, when an MRI revealed a healing foot fracture, Plaintiff was not referred to surgery or put in a cast. Tr. 520–22. She did not wear a boot as instructed, but continued to walk without protection. *Id.* The ALJ reasonably concluded that the record reflects only conservative treatment and modest findings. The ALJ therefore provided clear and convincing reasons to reject Plaintiff's subjective symptom testimony regarding knee and foot pain prior to May 1, 2015.

## 2. Upper Extremities

The ALJ discounted Plaintiff's testimony regarding her upper extremities because her symptoms improved following various interventions and did not require significant ongoing

---

[3] While both Plaintiff and ALJ state that Plaintiff underwent ACL surgery in 2011, it appears to the Court that the surgery actually occurred in January of 2012. Tr. 143, 574–76.

treatment. Tr. 28. Specifically, the ALJ concluded that "[t]he medical evidence . . . documents significant improvement in the claimant's bilateral carpal tunnel syndrome following surgery, as well as improvement after cubital tunnel release and occupational therapy." Tr. 28. The ALJ's own recitation of the record undermines this conclusion. Plaintiff reported carpal tunnel symptoms in June 2014, and an August electrodiagnostic evaluation documented severe carpal tunnel syndrome on the right and moderate carpal tunnel syndrome on the left. *Id.* Plaintiff underwent surgical interventions—via carpal tunnel release—in November and December of 2014. *Id.* While the doctor noted "'excellent resolution' of symptoms" following these surgeries, Plaintiff continued to report numbness and weakness. *Id.* Only two months later, in February 2015, the doctor performed a second surgical intervention—a cubital tunnel release. *Id.* Again, Plaintiff continued to report numbness, weakness, and functional limitations. *Id.* While Plaintiff was discharged after four visits from occupational therapy—*because she "demonstrated independence in her home exercise plan*," not because the issues resolved—she continued to report pain, numbness, weakness, and functional limitations. *Id.* In her briefing, Plaintiff also notes that along with cubital tunnel release in February 2015, she also underwent surgery for "anterior subcutaneous ulnar nerve transposition" and showed only "modest" improvement afterwards. Tr. 847.

"In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's 'ability to work on a sustained basis.' Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Here, the record demonstrates that at most, for brief periods of time, Plaintiff experienced some relief from pain and numbness in her hands. It does

not reflect "significant improvement" or a lack of ongoing treatment. The ALJ therefore erred in rejecting this subjective symptom testimony.

Plaintiff also argues the ALJ did not provide clear and convincing reasons for rejecting her testimony regarding shoulder impairments; in particular, that she cannot reach overhead. Plaintiff argues the ALJ erroneously provided a single rationale: that the "RFC findings, which include a limitation to occasional overhead reaching on the right, account for Plaintiff's shoulder limitations." Pl. Br. 5. According to Plaintiff, the "record shows that Plaintiff has ongoing pain in her shoulder, and she has been treated with injections and chiropractic care. (Tr. 903-04, 948, 1588, 629, 638.) Exams reveal reduced range of motion. (Tr. 939.)" Pl. Br. 6.

The ALJ did not rely solely on her RFC findings. The ALJ also noted only moderate MRI findings and improvement after each round of steroid injections. Tr. 28. As discussed above, moderate findings and sustained improvement are valid reasons to disregard subjective symptom testimony. Plaintiff's citations to the record do not dispel these conclusions. The ALJ did not therefore err in rejecting this subjective symptom testimony.

### 3. Activities of Daily Living

Plaintiff argues the ALJ erroneously relied on her activities of daily living as a basis for discounting her symptom testimony. The Court agrees. In discussing Plaintiff's activities, the ALJ noted that Plaintiff

> lives alone, cooks once or twice a week, and does household chores including dishes, laundry, and cleaning. She shops and goes to two AA meetings and two NA meetings a week and to church once a week. The claimant's hobbies include reading "a lot" and crocheting. She testified that she can drive but does not do so currently because she does not have insurance, and uses public transportation. In January 2015, [she] reported engaging in a job search and spending a lot of time doing tests for vocational rehabilitation (Ex. B38F/39). As noted above, the claimant spent time socializing with family and friends (Ex. B34F).

Tr. 30. The ALJ concluded that these "activities are not consistent with allegations of debilitating pain or depression, and do not support allegations of significant social limitations." Tr. 31. As an initial matter, the ALJ did not explain *how* these activities are inconsistent with Plaintiff's symptom testimony. For example, the Court is not convinced that living alone or cooking once or twice a week has any bearing on debilitating pain or depression. The Ninth Circuit has cautioned ALJs on this topic, explaining that claimants need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996); *Molina*, 674 F.3d at 1112–13 ("[A] claimant need not vegetate in a dark room in order to be eligible for benefits . . . .").

Moreover, the Court finds serious flaws in the ALJ's characterization of the record and resulting conclusions. For example, the ALJ wrote that Plaintiff "spent time socializing with family and friends (Ex. B34F)," and found this inconsistent with allegations of pain, depression, and significant social limitations. The Court assumes the ALJ meant to cite exhibit B43F, discussed earlier in the ALJ's report, as the records at B34F make no reference to time socializing with family and friends. *See* tr. 1265-1269. The records at B43F, however, document Plaintiff's stay at Cascadia Respite. Tr. 1609. Cascadia Respite is a voluntary "alternative to psychiatric hospitalization" that "is designed to provide short-term stability and supports to individuals who are experiencing a mental health-related crisis." *Crisis Intervention*, Cascadia Whole Health Care, https://www.cascadiabhc.org/services/crisis-intervention/. Plaintiff entered Cascadia Respite following a relapse with drugs and alcohol, and suicidal ideation connected with a major depressive disorder. Tr. 1610. While these records—"shifts notes" written by staff monitoring Plaintiff's behavior at the center—do note that Plaintiff socialized with peers, family,

and friends on occasion, the context is important; while Plaintiff may have interacted with others at Cascadia Respite, her placement at the center was, in part, the result of serious issues with depression and suicidal ideation. The context makes clear that these observations cannot reasonably be used to discredit Plaintiff's testimony that she suffered from pain, depression, and significant social limitations.

To the extent the ALJ relied on Plaintiff's daily activities to discount testimony related to her upper extremities (discussed above), the Court finds the ALJ committed harmful error. However, to the extent the ALJ relied on Plaintiff's daily activities to discount other symptom testimony, the Court finds the error harmless, as the ALJ provided other reasons that are sufficient to uphold the overall evaluation. *See Batson*, 359 F.3d at 1197 (holding that error by an ALJ as to one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record).

## II.     Medical Opinion Testimony

Plaintiff argues the ALJ improperly rejected the opinions of three medical sources. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion

is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record.  *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record.  *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); Id. at 1161; *Orn*, 495 F.3d at 632–33. "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Ghanim*, 763 F.3d at 1161 (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).

### 1.  Teresa Everson, MD

Dr. Everson began treating Plaintiff in January 2014. Tr. 915. She opined, in part, that Plaintiff could lift and carry less than ten pounds occasionally, and no weight frequently. Tr. 34. She also concluded that Plaintiff could occasionally finger, but never "reach overhead or at shoulder height, or handle." Tr. 34–35.

The ALJ gave Dr. Everson's opinion "some weight" to the extent it related to the period after May 1, 2015 and remained consistent with sedentary work. Tr. 35. She gave it little weight for the period before May 1, 2015, "as it is dated after the established onset date" and "because

the limitations related to the claimant's knees are only supported after that date as evidenced by her reports of pain in May 2015 and her MRIs." *Id.*

Plaintiff argues that while the ALJ gave reasons for rejecting *some* of the opined limitations, she did not give reasons for rejecting *all* of the opined limitations. Specifically, she did not give a reason for rejecting Dr. Everson's opinion that Plaintiff could carry less than ten pounds only occasionally, could not reach overhead or at shoulder height ever, could not handle, and could only occasionally finger. Because *no* reasons were given, Plaintiff argues these limitations should be credited as true as a matter of law.

In response, Defendant first argues that Plaintiff cannot establish harmful error because the assessment is dated after the determined date of disability. Defendant argues the assessment does not "relate to the period before May 1, 2015" because it is post-dated, written in the present tense, and does not explicitly state that it applies to the earlier period. Def. Resp. 7. The Court does not agree with Defendant's analysis. The assessment is dated only ten days after the ALJ determined date of disability. Dr. Everson began treating Plaintiff in January 2014—more than a year before she completed the assessment—and the assessment contemplates conditions and limitations documented throughout the treating relationship. Given the mere ten-day delay, the length of the treating relationship, and the chronic nature of Plaintiff's impairments, it was unreasonable to interpret Dr. Everson's assessment as only supporting disability beginning on May 1, 2015.

Defendant also argues that an ALJ is not required "to discuss every line item in an opinion or give independent reasons for rejecting each aspect of it that a claimant deems important." Def. Resp. 9. Rather, an ALJ is only required to provide specific and legitimate reasons, supported by substantial evidence, for rejecting an opinion at large. *Id.*

While an ALJ may not be required to explicitly discuss every line item in an opinion, and may provide reasons that discredit a doctor's opinion in its entirety, the ALJ here has provided very specific reasons for discrediting specific limitations, and does not extend those reasons to the opinion at large. For example, the ALJ wrote that "there is no support for the limitation to sitting for less than six hours in an eight-hour workday, and the doctor failed to provide any basis or support for the limitation." Tr. 35. She also noted that the "doctor's statements regarding the claimant's need to recline are not supported by any objective findings and appear to be based on the claimant's subjective reports, as do her statements regarding attendance." *Id.* These reasons are, by the ALJ's own words, limited to specific conditions, and cannot extend, without further articulated reasoning, to others.

The ALJ therefore failed to provide specific and legitimate reasons, supported by substantial evidence, for discrediting certain portions of Dr. Everson's opinion.

### 2. Andrew Seaman, MD and Beth Williams, NP

Ms. Williams and Dr. Seaman, a treating team, provided a physical capacity assessment at the request of Plaintiff's attorney. Tr. 35. Ms. Williams performed the assessment on December 15, 2015. Tr. 1269. She opined, in part, that Plaintiff could not lift more than ten pounds, and could not perform repetitive grasping, gross manipulation or any overhead reaching. Tr. 1268. Dr. Seaman concurred with this opinion on February 22, 2016. Tr. 35, 1268, 1704.

In relevant part, the ALJ gave this opinion little weight before May 1, 2015 because the assessment was issued more than six months later, and was "based in part on the claimant's knee problems, which were not significantly problematic until on or around May 2015." Tr. 35–36. Plaintiff argues again that the ALJ failed to provide *any* reasons, let alone specific and legitimate

ones, for rejecting the opined limitations on Plaintiff's ability to lift more than ten pounds, or perform repetitive grasping, gross manipulation, or overhead reaching.

To the extent the ALJ may have failed to provide reasons that apply to each of these limitations, the Court concludes this error was harmless. Unlike Dr. Everson's opinion, Ms. William's assessment is dated December 15, 2015—more than seven months after Plaintiff's determined date of disability. On the date of the assessment, Ms. Williams stated she could not opine as to patient's prognosis as "patient ha[d] not been in [her] care long enough to determine." Tr. 1268. Dr. Seaman concurred with the assessment on February 22, 2016—more than nine months after the date of disability. While neither party, nor the ALJ, identified the treatment records associated with Ms. Williams' opinion, the Court believes that Ms. Williams did not begin treating Plaintiff until September 2015, five months after the date of disability. Tr. 1375. The ALJ gave the assessment "little weight for the period prior to May 1, 2015, because the assessment was issued more than six months after the established onset date." Tr. 35. Based on this significant gap in time, the fact that Ms. Williams did not begin treating Plaintiff until September, and a lack of any indication that the assessment encompassed pre-May 2015 limitations, the Court finds the ALJ did not err in this determination. Therefore any possible error in the ALJ's analysis applies only to the period after May 1, 2015. Because the ALJ found Plaintiff disabled as of this date, any resulting error is harmless.

### III.    Remand for Benefits/Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d

1090, 1100 (9th Cir. 2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that remand for an award of benefits is appropriate. As discussed above, the ALJ only erred in discounting parts of Plaintiff's subjective symptom testimony and parts of Dr. Everson's medical opinion evidence. Even if the Court credits these parts as true, the record is not fully developed. In particular, there are outstanding questions concerning the disability onset date. For example, while it is clear to the Court that Dr. Everson's opinion on Plaintiff's limitations extends to the period before May 1, 2015, it is not clear whether these limitations extend back to the alleged disability onset date. While Plaintiff alleges disability began December 1, 2013, Dr. Everson did not begin treating Plaintiff until January 2014. *See* tr. 914. Because questions remain as to the disability onset date, the Court declines to remand this case for the payment of benefits.

<u>CONCLUSION</u>

The decision of the Commissioner is reversed and remanded for further administrative proceedings to consider whether Plaintiff was disabled between December 1, 2013 and April 30, 2015.

IT IS SO ORDERED.

Dated this _20_ day of _March_, 2019.


_____
MARCO A. HERNÁNDEZ
United States District Judge